## MILLALEY v. CITY OF GRAND RAPIDS.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CAUSE OF DEATH A QUESTION FOR DEPARTMENT OF LABOR AND INDUSTRY.
   In proceedings under the workmen's compensation act for the accidental death of an employee, whether arteriosclerosis, from which he died in 1923, was caused by blood poisoning, the result of an accidental injury to his shin in 1916, *held*, under the evidence, a question for the department of labor and industry, whose finding thereon may not be reviewed by the Supreme Court.[1]

2. SAME — WHETHER POLICEMAN IS CITY OFFICER DEPENDS ON CHARTER.
   Whether a member of the police force of a city is to be regarded as an employee or an officer of the city depends primarily upon the provisions of its charter.[2]

3. SAME—GRAND RAPIDS CHARTER.
   Under the charter of the city of Grand Rapids, a police captain is not an officer of the city.[3]

4. SAME—LIMITATION OF TIME FOR PRESENTING CLAIM MAY NOT BE EXTENDED BY INFERENCE.
   In view of the language of the workmen's compensation act (2 Comp. Laws 1915, § 5445, as amended by Act No. 64, Pub. Acts 1919), providing that no proceedings for an injury thereunder should be maintained unless notice thereof was given within three months and claim made for compensation therefor within six months, with certain exceptions, and then expressly providing that no such claim should be valid or effectual for any purpose unless made within two years from the date the accidental injury was sustained, there is no room for an inferred legislative intent that for some purposes the time might be extended even beyond the six-year limitation of the general statute.[4]

[1]Workmen's Compensation Acts, C. J. § 127; [2]Id., C. J. § 39; [3]Id., C. J. § 39; [4]Id., C. J. § 103.
   On right and extent of review of commission under workmen's compensation act, see note in L. R. A. 1917D, 186.
   On applicability of compensation acts to States, counties, cities, districts, charitable and other public institutions, and their employees, see note in L. R. A. 1918F, 190.

5. SAME—JURISDICTION OF DEPARTMENT OF LABOR AND INDUSTRY CONFERRED BY STATUTE.

> The department of labor and industry has no jurisdiction beyond that conferred by the statute, and its jurisdiction, acquired over a case by award or agreement, is definitely limited to ending, increasing, or diminishing the weekly payment awarded or agreed upon, within the maximum and minimum amounts specified for not to exceed the number of weeks authorized by the act, with costs, fees, etc., when application for review is made by one of the interested parties (2 Comp. Laws 1915, § 5467, as amended by Act No. 60, Pub. Acts 1921).[5]

6. SAME—TEST OF EMPLOYEE'S RIGHT TO COMPENSATION.

> The test of the right to compensation under the act is the inability of the injured employee to work and earn wages at the employment in which he was engaged when injured.[6]

7. SAME—CLAIM SIX YEARS OLD BARRED BY STATUTE.

> A claim for an employee's death from arterio-sclerosis caused more than six years before by blood poisoning resulting from an accidental injury, is barred by the limitation in the workmen's compensation act (2 Comp. Laws 1915, § 5445, as amended by Act No. 64, Pub. Acts 1919) where the employee apparently recovered from the blood poisoning in a few months, and worked and received full wages until about a year before his death, when he retired on an old-age pension, and no claim for compensation was made until after his death.[7]

Certiorari to Department of Labor and Industry. Submitted December 9, 1924.   (Docket No. 124.) Decided May 14, 1925.

Ellen Millaley presented her claim for compensation against the city of Grand Rapids for the accidental death of her husband in defendant's employ.   From an order awarding compensation, defendant brings certiorari.   Reversed, and order vacated.

---

[5]Workmen's Compensation Acts, C. J. § 151; [6]Id., C. J. § 81; [7]Id., C. J. § 103.

*Ganson Taggart* and *Charles A. Watt,* for appellant.

*Clare J. Hall* (*Amos F. Paley,* of counsel), for appellee.

STEERE, J.   This is a proceeding by certiorari in which defendant seeks reversal of an award by the department of labor and industry to plaintiff, as widow of Dennis Millaley, for his claimed accidental death while in the service of the defendant city as a policeman.   The deputy commissioner who conducted the arbitration proceedings found plaintiff was not entitled to compensation, but on her appeal to the full board an order was made by two of the commissioners reversing the deputy's decision and awarding her compensation "at the rate of $10 per week for a period of 300 weeks, less 13 weeks and 2 days, for which compensation was paid to deceased during his lifetime," $501.67 of which was found then due and ordered paid forthwith.   Defendant's grounds for denying plaintiff's right to compensation are summarized as follows:

"1. Because any claim on the part of the claimant in this case is barred by the limitation provided by section 15, part 2, of the workmen's compensation act, as amended by Act No. 64 of the Public Acts of 1919 (Comp. Laws Supp. 1922, § 5445), in that the claim is not made until more than two years after the date the injury was received.

"2. Because no claim was made against the city within six years from the date of the recovery of deceased from the first injury claimed, or from the date of the final settlement of all claims against the city, and because the same is barred under the general statute of limitations (3 Comp. Laws 1915, § 12323).

"3. Because said Dennis Millaley was at the time of his injury a police constable and captain of police, an officer of the city of Grand Rapids and not an employee within the provisions of the workmen's compensation act.

"4. Because the accident mentioned was not the

cause of the injury complained of in this case, it being claimed that the blood poisoning that resulted from the accident resulted in the injury now complained of, but not the accident itself."

Dennis Millaley died February 13, 1923, when approximately 65 years of age, survived by plaintiff and their three grown children. The death certificate furnished by the physician who attended him in his last illness stated the cause of his death was "arteriosclerosis, general myocarditis degenerative."

Deceased was a member of the police force of the city of Grand Rapids for 38 years prior to January 23, 1922, at which time he was retired on a pension of $50 per month which was regularly paid him by defendant until his death. With the exception of an illness from blood poisoning in 1916 incapacitating him for duty for nearly three months, he was regularly on duty during the 38 years of his active service on the police force. He entered the service as police constable in 1884 and by promotion attained the rank of police captain in 1908, in which position he served on night duty from that time until his retirement. His hours of duty were from 6 p. m. to 3 a. m. During the night of March 27, 1916, while engaged in making an arrest, he sustained a bruise or abrasion of his left shin. On his return to police headquarters he called the attention of the police matron to the abrasion. She took her "first aid kit" and dressed the injury. It did not then disqualify him for duty and he thereafter continued on active duty without loss of time until May 5, 1916, when it was found blood poisoning had developed. The physician with whom he had consulted sent him to a hospital and called another physician in consultation. They found a serious condition with abscesses formed along his leg. An anæsthetic was administered and the abscesses were opened in five different places. He remained in the hospital for about

two weeks and was then taken to his home where the physicians attended him until another abscess developed near the groin which they relieved by opening under an anæsthetic. His regular physician visited him thereafter until about August 7, 1916, when he had sufficiently recovered to return to active duty at police headquarters although yet lame. He at first used crutches and rode in an automobile to and from the police station. Plaintiff testified he first used crutches and then a cane, saying "I should judge in all, the crutches and cane, six weeks." After returning to duty he visited his physician's office a few times. The latter said:

"I would see him, sometimes every day, on duty. I don't remember how many times he called at the office after that; it was only for a little while, so to speak; he got well; he didn't call at the office, but I would see him on the street and so on."

On September 15, 1916, deceased gave notice to the city under the employers' liability law of claim for compensation for injury received while in its employ and on the same date a "report" of the accident was made by, or for the employer "City of Grand Rapids, Board of Police and Fire Commissioners," signed by H. W. Nelson, as "Secretary Board of Police and Fire Commissioners." These papers were received by the industrial accident board on September 16, 1916. An agreement for compensation between the parties was entered into, signed by "Dennis Millaley" and "Board of Police and Fire Commissioners, by H. W. Nelson," under which Millaley received full pay for all lost time and payment of the hospital and physicians' bills. Settlement receipt and final report of the accident followed. The final report to the industrial accident board was made November 10, 1916, and showed, amongst other things—

"Date of final payment—October 25, 1916. Date

of accident—March 27, 1916, but worked until May 5, 1916. Date of return to work—August 7, 1916."

The compensation proceedings were in customary form on blanks required by the board to be used, the printed instructions advising that "incomplete or indefinite reports will be returned for correction. * * * Incomplete reports will not be accepted." The final report bears an indorsement or memorandum "(completed)." This settlement was made after deceased had resumed his duties and been on active service for some time. He remained on active duty as police captain for over six years thereafter. The police matron testified that when he first returned he was lame and used a cane, she did not remember how long but he got well and attended to his duties as usual, apparently cured of all his troubles, and from that time on he worked there for five or six years.

After the adjustment of his claim in full and final report in 1916 no further claim or complaint to defendant was made that Millaley was yet injuriously affected in any way as a result of that accident until after his death, when plaintiff began this proceeding claiming that the hardening of his arteries of which he died in 1923 was caused by the blood poisoning which resulted from the injury to his shin in 1916. She produced expert opinion testimony of physicians to the effect that although the symptoms of blood poisoning might be gone the attack of it which he underwent "would leave a residual effect," tending to lower his mental and physical capacity, which "might be the sequela of an infection of this kind," through which the cause of his death might be traced to blood poisoning which resulted from the accident. Upon that ultimate theory the conclusions of the medical experts were conflicting. They appear to agree that the most common cause of arterio-sclerosis is old age, but disagree as to whether any infection except syphilis will

cause it. On the facts of this case hypothetically stated from plaintiff's evidence, they disagree as to whether or not the blood poisoning caused or contributed to the disease of which Millaley died. While the expert testimony on that subject was largely limited to possibilities or probabilities as to what causal connection the blood poisoning might or might not have with the disease of which deceased died, there was sufficient positive expression of opinion both ways to raise an issue of fact within the province of the commission to decide whether or not plaintiff showed by a preponderance of convincing evidence that deceased's death in 1923 was caused by the abrasion of his shin in 1916. This court is not at liberty to pass upon its credulity.

Defendant's contention that deceased was an official of the city and not an employee within the meaning of the compensation act is not tenable under the facts of this case. Whether a member of the police force of a city is to be regarded as an employee or an officer of the city depends primarily upon the provisions of its charter. *Blynn* v. *City of Pontiac,* 185 Mich. 35; *McNally* v. *City of Saginaw,* 197 Mich. 106; *Walker* v. *City of Port Huron,* 216 Mich. 361. In *Burroughs* v. *Eastman,* 93 Mich. 433, this court held, as applied to the issue there raised, that a captain of police was not under the provisions of its charter to be regarded as an officer of the city of Grand Rapids. Furthermore, the city in its original report of the accident involved here recognized deceased as an employee, settled with him as such, paid him compensation under the act, and when this case was first heard its counsel answered "Yes" to the inquiry of the commissioner: "Is it stipulated that both employer and employee was subject to the compensation laws?"

The more serious question raised is defendant's contention, consistently urged from the beginning, that

under the facts of this case plaintiff's claim is barred by both the general statute of limitations and the special limitation of the compensation act. The general statute of limitations (3 Comp. Laws 1915, § 12323) provides:

"All actions in any of the courts of this State shall be commenced within six years next after the causes of action shall accrue, and not afterward, except as hereinafter specified: *Provided, however,* * * *
"2. Actions to recover damages for injuries to person or property shall be brought within three years from the time said actions accrue, and not afterwards."

The limitation specified by the employers' liability act provided as follows at the time of deceased's injury (2 Comp. Laws 1915, § 5445):

"SECTION 15. No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury shall have been given to the employer three months after the happening thereof, and unless the claim for compensation with respect to such injury shall have been made within six months after the occurrence of the same; or, in case of the death of the employee, or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity."

This section was amended seven years later (Act No. 64, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 5445]) to read as follows, so far as material here:

"SECTION 15. No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury shall have been given to the employer within three months after the happening thereof, and unless the claim for compensation with respect to such injury, which claim may be oral or in writing, shall have been made within six months after the occurrence of the same; or, in case of the death of the employee, within six months after said death; or, in the event of his physical or mental incapacity,
231—Mich.—2.

within the first six months during which the injured employee is not physically or mentally incapacitated from making a claim: *Provided, however,* That in all cases in which the employer has been given notice of the injury, or has notice or knowledge of the same within three months after the happening thereof, but the actual injury, disability or incapacity does not develop or make itself apparent within six months after the happening of the accident, but does develop and make itself apparent at some date subsequent to six months after the happening of the same, claim for compensation may be made within three months after the actual injury, disability or incapacity develops or makes itself apparent to the injured employee, but no such claim shall be valid or effectual for any purpose unless made within two years from the date the accidental personal injury was sustained." * * *

It is urged for plaintiff that the general statute of limitations has no application here because the department of labor and industry is not a court, as this court has held, and a proceeding before it is not an action "in any court of this State." Technically viewed, there is much force in that contention. When creating this commission, however, the legislature provided a special statute of limitations to govern its proceedings, evidently recognizing that its *quasi*-judicial functions were analogous to that of a court in the particular that the functions of both were directed to compulsory collection of money claimed due, or the enforcement of a legal right. The awards of the commissioners, like determinations of referees, or commissioners on claims, are in a sense auxiliary to actions in courts, as a supplemental judgment in a court is essential for their enforcement by legal process (2 Comp. Laws 1915, § 5466). That these proceedings are directed to like purpose and in many respects analogous to actions at law for personal injuries is evident, and the legislature has apparently so recognized in providing statutes of limitation.

While the general statute fixes the maximum for all actions at six years, in actions for personal injuries based on some wrongful act of the defendant it is limited to three years, and in proceedings under the compensation act, where no negligence or tort of the respondent is essential to an award, it was limited to six months at the time this accident occurred, and by later amendment enlarged with the express limitation that no such claim should be valid *for any purpose* unless made within two years from the date of the accidental injury.

When the legislature in providing a statute of limitations for the amended act began the paragraph with a provision that "No proceedings for an injury under this act shall be maintained" unless notice is given within three months and claims made for compensation within six months, followed by certain excepting extensions in special cases including "or in case of the death of the employee within six months after said death," and then expressly provided that no such claim should be "valid or effectual for any purpose unless made within two years from the date the accidental injury was sustained," there is little room for an inferred legislative intent that for *"some purposes"* the time might be even extended beyond the six-year limitation of the general statute. It would be a forced construction to so hold were the words "for any purposes" ignored, but as it reads the plain limitation following the excepted extensions is graphically emphasized.

In its findings the commission cites *Curtis* v. *Slater Construction Co.*, 194 Mich. 259, to the point that once it has acquired jurisdiction of a case either by an award or an agreement under the act in regard to compensation it "retains jurisdiction indefinitely." The commission was created by statute and has no jurisdiction beyond that conferred by the statute.

Its jurisdiction acquired over a case by award or agreement is definitely limited to ending, increasing or diminishing the weekly payment awarded or agreed upon, within the maximum and minimum amounts specified for not to exceed the number of weeks authorized by the act, with costs, fees, etc., when application for review is made by one of the interested parties (2 Comp. Laws 1915, § 5467, as amended by Act No. 60, Pub. Acts 1921 [Comp. Laws Supp. 1922, § 5467]).

In the *Curtis Case*, John Curtis was injured November 20, 1913. By agreement with his employer he was paid weekly compensation for a time, was paid and receipted for a certain amount in final settlement and returned to work, but later claiming that he found himself unable to continue work because of his injuries he petitioned the industrial accident board on December 6, 1914, to re-open the case and grant further compensation. An award was made on September 23, 1915. He had died, apparently of his injuries, in the meantime, and the claim was renewed in the name of his administratrix *de bonis non.* The award only covered the period from the last payment to the date of his death. The court held that by the agreement for compensation filed with the board the employer waived the statutory requirement that the employee should make his claim within six months from the date of the injury and affirmed the award. The *Curtis Case* again came before this court (202 Mich. 673) and it was found that the widow had lost all right to claim compensation through failure to make her claim six months after Curtis' death. In that and other cases cited where claim of compensation after death was made no question of the two-year or general statute of limitations running from the date of the accident was involved. Of this law, it was said in *Podkastelnea* v. *Railroad Co.,* 198 Mich. 321:

"The purpose of requiring a claim for compensation is to give the employer notice, to enable him to employ skilled physicians to treat and care for the employee, thus minimizing his loss, and inuring to the benefit of the employee.  It is its purpose to enable him to investigate claims made against him, and to do this when the matter is fresh in the minds of those who saw or knew of the accident, and to prevent the pressing of stale and unfounded claims.  *  *  *
"The whole scheme of this act is designed to work out a speedy adjustment and payment of claims for industrial accidents.  The injured employee is given a reasonable time, three months, in which to give notice of the accident, and ample time, six months, to make claim for compensation, with certain exceptions, named in the section."

The six months limitation of time as first set by the act was found to work harshly in certain special cases where the result of the injury was not at first clearly manifest, and in 1919 the legislature amended and revised that section of the act, retaining the six months limitation after the death of the injured party, which as it read in the old act was otherwise unlimited and ran for his lifetime no matter how long he lived, but with that provision before them and presumptively in mind positively and without qualification fixed two years as a proper limitation within which all such personal injury claims for compensation should be made.  It cannot be said with reason the legislature blundered, or did not intend to say what it so plainly said.  It was in harmony with the design of the act, as above quoted, to work out a speedy adjustment of claims for industrial accidents and prevent the pressing of stale and unfounded claims, and within the spirit of our general legislation on limitations, which limits actions for personal injuries to half the six years allowed for other actions, for reasons generally recognized as well founded.

The test of the right to compensation under the act is the inability of the injured employee to work and

earn his wages at the employment in which he was engaged when injured.   In the instant case when deceased had apparently recovered from his attack of blood poisoning in 1916 and was able to resume his employment, defendant promptly recognized his claim for compensation, paid him full wages for lost time, hospital expenses, etc., and made a final settlement with him under the act, satisfactory to both parties. He thereafter continued in defendant's employ in the same position as before, at full wages, without any lost time until January 25, 1922, when he retired on an old-age pension to which he was entitled and died about a year later of arterio-sclerosis, or hardening of the arteries, a disease of which, as plaintiff's expert testified, "the principal cause is old age."

The right to compensation for industrial accidents where the employer is blameless is purely statutory.

"Where a statute grants a right which did not exist at common law, and prescribes the time within which it must be exercised, the limitation is of the essence of the right.   The statute of limitations is a positive rule of law which must be enforced by the courts when pleaded and found applicable." 1 Wood on Limitations (4th Ed.), 11.

This case falls within both the spirit of the act and letter of the prescribed limitation under consideration. It follows that the award appealed from must be and the same is hereby reversed.

McDonald, C. J., and Clark, Bird, Sharpe, Moore, Fellows, and Wiest, JJ., concurred.