2005 SD 35

**Robert OWENS, Employee and Appellant,**

v.

**F.E.M. ELECTRIC ASSOCIATION, INC., Employer,**

and

**Federated Rural Electric Insurance Corp., Insurer and Appellee.**

**No. 23155.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 4, 2004.

Decided March 9, 2005.

Rehearing Denied April 14, 2005.

Chet Groseclose, Sioux Falls, Robert M. Ronayne of Ronayne and Wein, Aberdeen, for employee and appellant.

R. Alan Peterson and Nicole Nachtigal Emerson of Lynn, Jackson, Shultz & Lebrun, Sioux Falls, for insurer and appellee.

GIENAPP, Circuit J.

[¶ 1.] Robert Owens (Owens) appeals the circuit court's affirmance of a summary judgment granted by a South Dakota Department of Labor (DOL) Administrative Law Judge (ALJ). The ALJ ruled that Owens' claim for workers compensation coverage was time barred by the two year statute of limitations prescribed by SDCL 62–7–35 and that Owens had not suffered a change of condition under SDCL 62–7–33. We affirm.

## FACTS

[¶ 2.] On October 16, 1998, Owens was employed as a line foreman by FEM Electric Association (FEM) when he was injured in a one vehicle accident while returning from a service call. Owens experienced intense pain and suffered injuries to his left shoulder as a result of the accident. Owens also testified that he suffered lower back pain immediately following the accident but there was no diagnosis or treatment for back pain until May 1999. Owens timely filed his first report of injury with his employer. Owens received medical treatment for his shoulder injury from Dr. Mark Harlow and by March 1999 his shoulder had recovered sufficiently to allow Owens to return to work. During this time, Federated Rural Electric Insurance Corp. (Federated), FEM's insurer, paid $13,840.21 [1] in medical and hospital bills on Owens' behalf as a result of his accident and shoulder problems.[2] Owens returned to work as a lineman with FEM in March 1999 and resumed his previous job duties, including climbing poles and pulling and tying line, with no complaints.

[¶ 3.] On May 5, 1999, Owens collapsed to the floor after getting out of bed because his leg could not support him. After seeing two doctors about leg and back pain, Owens filed a first report of injury with his employer. This first report of injury was dated May 26, 1999. Although this claim was given a different claim num-

---

1. Federated paid approximately $271 in outstanding medical bills after denying any future claims arising out of the October 1998 accident.

2. Owens also received almost $9,000 in temporary disability benefits.

ber by Federated to avoid confusion with the October 1998 injury, it was kept in the same file because of the possible relationship between the two injuries. On June 1, 1999, Federated issued a letter denying the claim for the back injury citing a lack of medical evidence and the fact that the claim did not arise out of a work related injury or accident.[3] The letter also invited Owens to furnish any additional information having a bearing on his claim.

[¶ 4.] On June 25, 1999, Federated informed Owens by letter that it was denying any future claims arising from the October 1998 accident. The denial was based upon Federated's finding that the injuries that arose from the October 1998 accident had been resolved leaving no permanency. Federated further informed Owens that under South Dakota law he had two years to request a hearing on his claim with DOL.

[¶ 5.] Owens underwent surgery in August 1999 to repair a herniated disc and was not able to return to his previous position of employment. Owens contended that the back pain he experienced in May 1999 was a result of the October 1998 accident. Owens filed a petition for workers compensation benefits with DOL in February 2002.

## STANDARD OF REVIEW

[¶ 6.] The guiding principles in determining whether a grant or denial of summary judgment is appropriate are:

(1) The evidence must be viewed most favorable to the nonmoving party; (2) The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (3) Though the purpose of the rule is to

secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists; (4) A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them; (5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant; and (6) Where, however, no genuine issue of fact exists it is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

*Jerauld County v. Huron Regional Medical Center, Inc.,* 2004 SD 89, ¶ 9, 685 N.W.2d 140, 142 (quoting *Dept. of Revenue v. Thiewes,* 448 N.W.2d 1, 2 (S.D.1989)) (citing *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968)).

[¶ 7.] This Court conducts a de novo review of summary judgment on statute of limitations issues where there are no disputes regarding genuine issues of material fact and only the application of the law is in question. *Sherman v. Sherman,* 2000 SD 117, ¶ 8, 616 N.W.2d 393, 394.

## ANALYSIS AND DECISION

### ISSUE ONE

[¶ 8.] **Whether Owens received sufficient notice of the denial of coverage to invoke the two year statute of limitations in SDCL 62–7–35 and time bar his claim.**

---

**3.** The June 1, 1999, letter appears to have been the notification mandated by SDCL 62– 6–3.

[¶ 9.] SDCL 62–7–35 provides a two year statute of limitations for workers compensation claims if "the self-insurer or insurer notifies the claimant and the department, in writing, that it intends to deny coverage in whole or in part[.]" On June 25, 1999, Federated notified Owens by letter of its intention to deny any claim for temporary total disability, temporary partial disability, permanent total disability, permanent partial disability, or rehabilitation. The letter went on to state that Federated concluded that it had paid all benefits to which Owens was entitled as a result of the October 1998 accident. This letter gave notice of denial as required by SDCL 62–7–35, and as a consequence, Owens' claim was time barred due to his failure to request a hearing within the two year statutory period.

[¶ 10.] Owens claims that the three year period of limitations in SDCL 62–7–35.1 applied to his claim. We disagree. This Court has stated that the two limitations periods apply to distinct circumstances:

SDCL 62–7–35 provides the limitations period when an employer gives formal notice that it denies or disputes an employee's claim, in whole or in part. Employers often accept responsibility for one part of a claim and deny responsibility for another. This statute places a two-year limit on claims that are formally denied. Conversely, SDCL 62–7–35.1 furnishes the limitations period when the employer provides the employee with benefits for a period of time, gives no denial notice, and then the matter lies inactive. In the latter circumstance, the employer has at least implicitly validated the employee's claim, and the longer three-year period is warranted because the triggering event under SDCL 62–7–35.1 is simply a cessation of benefits without notice of a dispute.

*Faircloth v. Raven Industries, Inc.*, 2000 SD 158, ¶ 8, 620 N.W.2d 198, 201–02.

[¶ 11.] The claims in this case are that there exists two injuries allegedly caused by one accident that resulted in one claim for injuries arising from the October 1998 accident. Federated approved the portion of the claim relating to the shoulder injury and paid benefits until the injury was resolved and Owens returned to his former duties with FEM. However, finding that the back injury was not work related, Federated denied that portion of the claim. Federated communicated this denial of any further compensation to Owens in its letter of June 25, 1999, rendering SDCL 62–7–35 applicable under the distinction made in *Faircloth.*

[¶ 12.] Owens argues that because the letter of June 25, 1999 was not specific, he did not know that it was related to his back injury. Therefore, Owens asserts the letter was ineffective in communicating Federated's intent to deny his claim for the back injury. However, when read as a whole it is apparent that Federated communicated its intent to deny all further claims for injuries resulting from the October 16 accident. Federated told Owens in the June 25 letter that because the injury of October 16 was resolved it was denying any further claims from that accident and would not pay any additional benefits arising from it. Furthermore, Federated informed Owens of the two year period within which he could challenge that decision. The letter stated that Federated had paid all benefits to which Owens was entitled. Since Federated had previously denied his claim for the back injury on June 1, Owens was given previous notice as to Federated's position on that injury. Because Owens alleges that his back injuries were a result of the October 1998 accident, when he was informed by Federated that he would receive no further compensation for

that accident other than what Federated had already deemed compensable, he received notice that he had two years to request a hearing on the denial. This notification of Federated's intent to deny further coverage for any claims arising from the October 16 injury satisfied the requirements of SDCL 62–7–35 and was sufficient notice to inform Owens that the two year statute of limitations had begun.

[¶ 13.] The wording of SDCL 62–7–35 does not require that there be specific language in the letter to the employee indicating that the benefits are being denied in whole or in part. As stated in *Faircloth*, SDCL 62–7–35.1 applies when no denial notice is given. The June 25, 1999, letter gave notice of denial.

[¶ 14.] Additional arguments raised by Owens are without merit.[4] Owens attempts to refute notice of the denial of the claim because 1) Federated assigned two different claim numbers to his two different injuries; and 2) Federated's June 25 letter was not in strict compliance with SDCL 62–7–35. First, as Roxanne Sewell, Federated's claim supervisor, testified, the reason for the two claim numbers was simply to avoid confusion in Federated's office. The two claims were kept in the same file so that whoever was reviewing the claims would know of the relationship between the two injuries. Assigning different claim numbers was merely a record-keeping procedure employed by Federated so that it could handle the shoulder and back injury complaints more efficiently. The existence of the two claim numbers is insufficient to support Owens' position, particularly when Owens related his back injury to October 16 and Federated in-

formed him that it was denying any further claims resulting from the October 16 accident. There is nothing in the record indicating that Owens in any way relied to his prejudice on the fact that there were two files.

[¶ 15.] Owens also claims that case law requires a standard of strict compliance with a statutory workers compensation scheme. *See Invie v. Control Data Corp.*, 311 Minn. 164, 247 N.W.2d 425 (Minn. 1976); *Cibor v. Fabricon Products Company*, 379 Mich. 229, 150 N.W.2d 769 (1967); *Belton v. Traynor*, 381 F.2d 82 (4th Cir. 1967). These cases are unpersuasive. All of these cases deal not with notice to the claimant, but notice to the appropriate workers compensation board. These authorities do not merit departure from the finding that the June 25 letter supplied sufficient notice to Owens of Federated's intent to deny all further claims from the October 1998 accident.

[¶ 16.] Owens' final two arguments challenge the sufficiency of the notice of denial of his claim because Federated was denying disability and not coverage and because Federated continued to pay benefits relating to the shoulder injury after its denial of the back injury claim. A review of the June letters and the transcript of the Sewell deposition reveals the distinction in the treatment of the two injuries by Federated. As of June 25, 1999, Federated was denying disability for the shoulder injury but was honoring its commitment to pay medical expenses related to rehabilitation of the injury. The fact that $271 was paid after June 25, 1999 does not operate as a waiver of the two year limitations period, but rather shows Federated's com-

---

4. FEM contents that these additional arguments were not addressed in the lower court and as a consequence should not be addressed for the first time on appeal. *South Dakota Board of Nursing v. Jones*, 1997 SD 78, n. 7, 566 N.W.2d 142, 147. These issues are addressed in this decision even though they were, at best, minimally submitted in the lower court proceedings.

mitment to paying claims it had approved. As of June 25, 1999, Federated was reiterating its position of June 1 that it was denying any coverage relating to the back injury because that portion of the claim had not been deemed compensable. Federated was denying further disability for the shoulder injury and denying coverage for the back injury.

### ISSUE TWO

[¶ 17.] **Whether Owens suffered a change of condition under SDCL 62–7–33 entitling him to reopen his workers compensation claim.**

[¶ 18.] SDCL 62–7–33 allows DOL to re-open and modify a workers compensation award "if the department finds that a *change in the condition* of the employee warrants such action." (emphasis added). This Court has interpreted a "change in condition" as

> ordinarily a change, for better or worse in claimant's physical condition. This change may take such forms as progression, deterioration, or aggravation of the compensable condition, achievement of disabling character by a previously symptomatic complaint, appearance of new and more serious features, such as discovery of a disc herniation in a back case, failure to recover within the time originally predicted, and superimposition or worsening of a neurotic condition.

*Mills v. Spink Elec. Co-op.*, 442 N.W.2d 243, 246 (S.D.1989) (quoting 3 Larson, The Law of Workmens Compensation, § 81.31(a) (1988)). "Only after a party asserting a 'change in condition' has met the required burden may the Department reopen a previous award." *Sopko v. C. & R. Transfer Co., Inc.*, 1998 SD 8, ¶ 12, 575 N.W.2d 225, 231. "Where a claimant, however, fails to show a change in condition, a final compensation award is res judicata with regard to the condition of the injured

employee at the time the award was entered." *Id.*

[¶ 19.] While application of SDCL 62–7–33 usually arises where a change in condition occurs after a settlement and release to forego benefits, such a release is not a prerequisite to re-opening a claim. Furthermore, discovery of a herniated disc has been recognized as a change in condition. *See Mills*, 442 N.W.2d at 246. However, Owens did not satisfy the statutory requirement of demonstrating a change in condition pursuant to SDCL 62–7–33.

[¶ 20.] Assuming, *arguendo*, that Owens could prove causation, there is no doubt that the herniated disc which manifested itself on May 5, 1999 would have been a change in condition had it occurred after the limitations period had run on his claim for injuries from the October 1998 accident. The proper procedure for Owens would have been to request a hearing for review of Federated's denial of the portion of his claim relating to his back injury. Allowing application of SDCL 62–7–33 before the two year time limitations period expired would strip the effectiveness of the two year limit on requesting a hearing to review a claim. Because Owens, by his own admission and by the post-surgical reports of Dr. Rak, did not experience a change in condition after June 25, 2001, he did not experience a change in condition under SDCL 62–7–33.

[¶ 21.] Owens' request for a hearing on Federated's denial of his claim for back injuries resulting from the October 1998 accident was time barred by the two year statute of limitations in SDCL 62–7–35. SDCL 62–7–33 was inapplicable because Owens did not experience a change in condition after June 25, 2001.

[¶ 22.] Affirmed.

[¶ 23.] GIENAPP, Circuit Judge for SABERS, Justice, disqualified.

[¶ 24.] KONENKAMP, Justice, concurs and ZINTER, Justice, concurs with writing.

[¶ 25.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, dissent.

ZINTER, Justice (concurring).

[¶ 26.] I concur because Owens was not confused by the June 25, 1999 notice indicating that the insurance company had "paid all benefits to which [Owens was] entitled . . . from the October 16, 1998, injury." He was obviously not confused because in his "first report of injury" dated May 26, 1999 (relating to the May 5, 1999 incident), he specifically indicated that his doctors had told him that the May 5, 1999 incident was possibly related to his October 1998 motor vehicle accident. Moreover, by May 26, 1999, Owens had also consulted with an orthopedist and a rheumatologist. Owens now concedes that "[b]oth of those doctors gave [him] the impression it was possible that the condition in his back . . . might be related to the October, 1998 truck accident." Owens had to have understood this to be the case because, according to Owens' brief, Dr. Rak, a neurosurgeon, saw Owens on June 7, 1999, diagnosed a herniated disc, and stated that his " 'problem started in October, 1998' with the truck accident." Finally, were there any doubt about this issue, Owens' deposition clearly confirmed that prior to the June 25, 1999 letter, he understood that his back and leg pain were related to the October 1998 truck accident. He testified:

Counsel: Now on May 5th when you crumpled to the floor, you suspected that that was caused by the October 18th, 1998 event, correct?

Owens: Yes.

Counsel: Because you called your employer right away and told them, didn't you?

Owens: Yes.

Counsel: And you told them you thought this was caused by the motor vehicle accident?

Owens: Yes.

[¶ 27.] Thus, considering Owens' own admissions, he cannot now claim that the June 25, 1999 letter from the insurer did not reasonably communicate a denial of coverage for the back injuries. Because Owens also failed to demonstrate any change of condition *after* the May 5, 1999 incident, the statute of limitations barred his most recent claim.

[¶ 28.] KONENKAMP, Justice, joins this writing.

GILBERTSON, Chief Justice (dissenting).

[¶ 29.] I respectfully dissent. I agree with the Court that we conduct a de novo review of a summary judgment on statute of limitations issues where there are no disputes regarding genuine issues of material fact and only the application of the law is in question. *See Trip–Tenn, Inc. v. Schultz*, 2003 SD 10, ¶ 7, 656 N.W.2d 747, 750. I also agree that the evidence must be viewed in a light most favorable to the nonmoving party. *Supra* ¶ 6. Most importantly in this case, I agree that a motion for "[s]ummary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant[.]" *Supra.*

[¶ 30.] On June 25, 1999, Owens received a letter from FEM purporting to notify him that all further claims for work-related injuries stemming from a truck accident

on October 16, 1998, were denied, and that he had only two years in which to file a protest under SDCL 62–7–35. However, the letter dated June 25, 1999, did not reference Owens' new claim filed on May 26, 1999, for his back injury that manifested itself on May 5, 1999. Owens had in his possession a letter pertaining to the May 5, 1999, back injury dated June 1, 1999, that included the following information:

D/A:[5]  5–5–99

Claim # : 40 WC 70620(rs)

"This is to inform you that in view of all the information submitted to us on behalf of your alleged injury of 5–5–99, your claim has been denied."

In the final paragraph of the letter, Owens was asked to submit any additional information that would have a bearing on the denial in writing to FEM. This Owens did in his petition for workers compensation benefits in February 2002, after having surgery to repair a herniated disc in August 1999.

[¶ 31.] In contrast, the June 25, 1999 letter from FEM to Owens included the following information:

Date of Accident:  October 16, 1998
Claim No.  40 WC 70560

[¶ 32.] FEM argued that the two different claim numbers were an internal control mechanism to alert their staff that two companion claims existed. However, once FEM released this information to Owens, FEM created the appearance of two separate claims. By failing to include a reference to both claims either by date or by claim number, FEM arguably failed to give Owens notice that his second claim was being denied by the letter dated June 25, 1999.

[¶ 33.] It is true that SDCL 62–7–34 only specifies the manner in which a notice must be served, that is in writing and either by registered or certified mail. However, the specific content of such notices must meet some standard of sufficiency, at the very least that of adequacy. Words in our statutory scheme that do not have a specific definition within the code itself "are to be understood in their ordinary sense." SDCL 2–14–1. Actual notice is defined as "[n]otice given directly to, or received personally by, a party." BLACK'S LAW DICTIONARY 1087 (7th ed 1999). Due notice, or adequate notice, is defined as ". . . notice that is legally adequate given the particular circumstance." *Id.* 1088. In the context of a pleading, the requirement is fair notice, which is defined as "[s]ufficient notice apprising a litigant of the opposing party's claim." *Id.*

[¶ 34.] A denial of workers compensation benefits is not a pleading in the sense of a complaint or answer filed in a civil suit. However, it does nonetheless attempt to convey to the reader the insurer's legal position on the workers compensation claim, and give notice of the appropriate statute of limitations for appealing a denial of benefits to which the reader may be legally entitled. Notice must be at the least sufficient to apprise a claimant of the insurer's or employer's intent with regard to a particular claim.

[¶ 35.] There exists a genuine issue of material fact, that is, whether FEM gave notice sufficient to bring the second claim for the May 5, 1999 back injury within the two-year statute of limitation in SDCL 62–7–35. Summary judgment was not appropriate in this case. I would remand this case to the Circuit Court for a determination of the facts with regard to the sufficiency of the notice for purposes of invoking the two-year statute of limitations in

5.  Date of Accident.

SDCL 62–7–35, or the three-year statute of limitations in SDCL 62–7–35.1.

[¶ 36.] MEIERHENRY, Justice, joins this dissent.